

ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JAN 1 4 2004
CLERK, U.S. DISTRICT COURT
By _____
    Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| POSITIVE SOFTWARE SOLUTIONS, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:03-CV-0257-N |
| | § | |
| NEW CENTURY MORTGAGE CORP., ET AL., | § | |
| | § | |
| Defendants. | § | |

## BENCH BRIEF IN SUPPORT OF POSITIVE'S MOTION FOR CONTEMPT

Plaintiff Positive Software Solutions, Inc. ("Positive Software"), files this Bench Brief in Support of Positive Software's Motion for Contempt against New Century Mortgage Corporation ("New Century"), John Norment ("Norment"), Kenneth Gardner ("Gardner"), Ophelia Camiña ("Camiña"), and Barry Barnett ("Barnett") (collectively the "Contemnors").

### I.
### THE CONTEMNORS' READING OF THE COURT'S MEMORANDUM OPINION AND ORDER AND PROTECTIVE ORDER RENDER EACH A NULLITY

Orders are not to be read so as to render their terms a nullity. *See Lynn-Lea Travel Corp. v. American Airlines, Inc.,* 283 F.3d 282, 291 (5th Cir. 2002) ("Lynn-Lea asserts that the [confidentiality] orders merely prohibited disclosure of the confidential documents but did not prohibit disclosure of the contents of such documents. . . . Lynn-Lea's argument is disingenuous. The magistrate judge rejected this argument in her contempt findings, correctly reasoning that Lynn-Lea's reading of the protective orders would render them a nullity."). *See also United States v. Greyhound Corp.*, 508 F.2d 529, 533 (7th Cir. 1974) (because an order is written to be obeyed, a court should not



ORIGINAL

interpret an order in a manner that makes it a "nullity"); *First Nat'l Bank & Trust v. Comptroller of the Currency,* 63 F.3d 894, 899 (9th Cir. 1995) ("The Bank contends the order required only 'adoption' not actual implementation, of the policies. Therefore, the Bank reasons, its failure to abide by those policies amounted to just that, a violation of the policies, not the terms of the cease and desist order. This argument is without merit. As the Comptroller puts it, 'the Bank's reading would render the cease and desist order meaningless; there is no point in having the Bank adopt a revision of its policies and practices if the Bank is not obligated to abide by' them."); *BancAmerica Commercial Corp. v. Mosher Steel of Kansas, Inc.,* 100 F.3d 792, 796-797 (10th Cir. 1996) (polluter's interpretation of rejected because it would "render meaningless" a provision of EPA order). The interpretations urged by New Century would effectively render the Protective Order as well as the Court's April 28, 2003 Memorandum Opinion and Order a nullity.

A. **THE COURT'S ORDERS CAN ONLY BE READ TO REACH ALL INFORMATION DESIGNATED BY THE POSITIVE SOFTWARE AS CONFIDENTIAL, NO MATTER THE MEDIA OR LOCATION.**

The Contemnors argue that New Century and its counsel were free to secretly provide the content of material designated "Highly Confidential" to New Century's Chief Technology Officer and other in-house computer programmers because other copies had previously been in New Century's possession.[1] This disingenuous argument is not new to our courts, only repeatedly rejected. Faced with a similar situation regarding a motion to seal a court record, the Second Circuit, like others facing similar arguments, put the argument down:

---

[1] Defendants' Opposition to Plaintiff's Motion for Contempt at 3 ("Plaintiff also knows that software and code already in defendants' possession is not subject to the protective orders' provisions on confidentiality because, by their own terms, those orders apply to material to be produced in the litigation, and they have no application to material in a party's possession before any discovery.").

BENCH BRIEF IN SUPPORT OF MOTION FOR CONTEMPT - PAGE 2

> The district court's interpretation of the Confidentiality Order [allowing disclosure of material in the party's possession prior to any filing of the material with the Court] would also make that Order meaningless. If the City has in its possession all the documents that are contained in the court file, and documents in the City's possession are not protected from disclosure, sealing the court file would serve no purpose – the contested material could be obtained simply by requesting it from the City itself. We find it hard to believe that the parties would have gone to such great efforts to draft an order with no practical effect.

*City of Hartford v. Chase*, 942 F.2d 130, 135 (2d Cir. 1991). The same is true in this case. The Court should not believe that Positive Software or New Century went to great effort to craft a Protective Order prohibiting access to Confidential Information by all New Century employees except three identified in-house counsel with the intent that New Century could provide the same information to its computer programmers developing systems to replace the Enjoined Code.[2] Likewise, Positive Software nor New Century could believe that the Court granted an injunction against the Enjoined Code's continued use with the idea that New Century's Chief Technology Officer in charge of developing competing/replacement products would continue to enjoy access.

Arguments that the *content* of confidential material is not protected, only the actual material produced, have been universally recognized as specious and rejected. New Century argues that the confidential aspect Positive Software's Confidential Information is limited to its form and the forum in which it is produced, not its content.[3] In similar fashion, the Contemnors argue that the Court never intended to fully enjoin access to and use of the Enjoined Code, but instead only uses unrelated

---

[2] The "Enjoined Code" includes the LoanForce software, the LoanForce database, LoanTrack-1, LF_Moon, and LTK_Moon, as recited in the Court's Memorandum Opinion and Order dated April 28, 2003 [Docket No. 88].

[3] Defendants' Opposition to Plaintiff's Motion for Contempt at 3.

BENCH BRIEF IN SUPPORT OF MOTION FOR CONTEMPT - PAGE 3

in any way to litigation.[4] This interpretation is indirect conflict with the Memorandum Opinion and Order's prohibition against "any use" if the Enjoined Code. In *Grove Fresh Distr., Inc. v. John Labatt Ltd.*, 888 F. Supp. 1427, 1437 (N.D. Ill. 1995), an Illinois district court faced similar arguments:

> Mr. Messina's primary defense is his assertion that the scope of the orders of confidentiality was so limited that neither the protective order or the seal prohibited his disclosures. According to Mr. Messina, the protective order prohibited the dissemination of very little. Mr. Messina testified that he did not understand the protective order to prohibit him from revealing the contents of pleadings. Nor from revealing confidential discovery information such as answers to interrogatories nor answers to requests to admit. Nor from disclosing the testimony of witnesses. Nor from disseminating the contents of documents marked confidential.
>
> Mr. Messina's interpretation of the seal order is similarly cramped. Mr. Messina testified that he did not understand the seal order as preventing him from revealing the contents of depositions under seal, other discovery material under seal, or quoting verbatim from sealed materials. The only thing that Mr. Messina believed the sealing order actually prohibited was the public disclosure of the actual pleadings – the physical documents themselves – filed in the case.

Like the contemnor in *Grove*, New Century and its lawyers take the absurd position that the *physical documents* produced by Positive Software in the litigation and designated "Highly

---

[4]This reading leaves the question of "Who is supposed to determine whether a programmers' access to and analysis of LoanForce did or did not result in that programmer gaining information, insight or thought processes that later found there way into LoanTrack-II or mLAS?" The only logical reading of the Memorandum Opinion and Order is that all access to and use of the Enjoined Programs by New Century was to cease other than uses by outside counsel and experts as allowed by the contemporaneously entered Protective Order. Otherwise, the exception swallows the rule of prohibition. An order should be interpreted to give effect to its spirit and purpose. *See Chase Indus., Inc. v. Frommelt Indus., Inc.*, 806 F. Supp. 1381, 1386 (N.D. Iowa 1992); *see also United States v. Cable News Network, Inc.*, 865 F. Supp. 1549, 1554 (S.D. Fla. 1992) ("Such a limited interpretation [of a temporary restraining order] ignores the order's stated purpose and the interests that the court was trying to protect.").

BENCH BRIEF IN SUPPORT OF MOTION FOR CONTEMPT - PAGE 4

Confidential"[5] are protected from disclosure, but the *information* contained in those documents can be disclosed to persons prohibited under the Protective Order if counsel so chooses. This is the "you can't see the documents, but I can read them to you" interpretation. How the information could or could not be used to aid litigation, and who at New Century could participate in such use is apparently under the Contemnors' reading of the injunction a matter left entirely up to New Century and its counsel *without reference to the Protective Order's limitations.* Similar arguments in other cases have been attempted, and rejected as "self-serving twist[s] at best." *Cable News Network, Inc.*, 865 F. Supp. at 1555.

In deciding whether the Contemnor's interpretation of the Protective Order is reasonable, the Court should also examine the Protective Order's audience. *See Grove,* 888 F. Supp. at 1437-1438 ("When the audience is a member of the bar, that fact will be taken into account in determining reasonable specificity, and orders that would otherwise require greater specificity for a layperson will require less for a lawyer.").[6] The audience for the Protective Order in this instance is a Nasdaq Financial 100 publicly traded corporation with an in-house legal department, represented by a law firm which holds itself out to be a firm of exceptional lawyers.[7] In short, no excuse exists for the Contemnors not to understand that the *content* of

---

[5]The designation of Positive Software's LoanForce code as information for outside counsel only came very early in the litigation. *See* April 10, 2003 Letter from W. Ralph Canada, Jr. to Ophelia Camiña, attached hereto as Exhibit 1.

[6]*Citing United States v. Cutler*, 815 F. Supp. 599, 607 (E.D.N.Y. 1993); *United States v. Turner*, 812 F.2d 1552, 1565 (11th Cir. 1987).

[7]*See* Susman Godfrey, L.L.P. website at http://www.susmangodfrey.com/firmresume.html ("Susman Godfrey puts a premium on winning because our lawyers have always excelled. More than three-quarters served as members of law reviews, most as editors. Almost two-thirds clerked for federal judges, five for Justices of the United States Supreme Court. The academic credentials of our

BENCH BRIEF IN SUPPORT OF MOTION FOR CONTEMPT - PAGE 5

the documents designated confidential was the subject of protection, not the paper, diskettes and CD-ROMs upon which they were produced. Those same intelligent lawyers should know that "any" use means.[8]

Another area for the Court to examine in determining whether the Contemnors actions were justified under the Protective Order's language is the context in which the Protective Order was entered. As stated in *United States v. Greyhound Corp.*, 508 F.2d 529, 532 (7th Cir. 1974), courts are not and should not be compelled to accept "twisted interpretations" or "tortured constructions" of an order. The Contemnors interpretations are certainly both twisted and tortured. The Contemnors argue that ***secret***[9] uses and copying[10] of material Positive Software designated "Highly Confidential," including the Enjoined Code, was fully available to New Century. It cannot be credibly argued that the Contemnor's thumbscrew construction and rag ringing interpretation does anything other than render the Protective Order and injunction nullities.[11]

---

lawyers speak volumes about the quality of work you can expect from us.")

[8]*See* WEBSTER'S NINTH COLLEGIATE DICTIONARY ("any: *adj* 2b. ALL – used to indicate a maximum or whole.").

[9]Mr. Norment never signed an undertaking pursuant to the Protective Order and New Century never informed Positive that its Chief Technology Officer was using the Enjoined Code for any purpose.

[10]Mr. Norment used a *copy* of the enjoined code to perform his analysis created from backup tapes. Norment Depo. at 276:13-18, transcripts previously provided.

[11]*See Cable News Network, Inc.*, 865 F. Supp. at 1552 ("To determine the clarity of an order, the court should first examine the circumstances in which it was entered.") (*citing Greyhound Corp.*, 508 F.2d at 532)

BENCH BRIEF IN SUPPORT OF MOTION FOR CONTEMPT - PAGE 6

Positive Software sought an injunction to *stop* New Century's use of its copyrighted code in the development of competing and/or replacement programs. Mr. Norment and his development team would be the last persons Positive Software would have granted access to the Enjoined Code. Mr. Norment testified in his deposition: "My day to day work is involved with software development, coordinating with the business unit and the IT department to meet the business requirements."[12] No one could read the Memorandum Opinion and Order and Protective Order within the context of this litigation as allowing Mr. Norment (and untold other programmers) access to the Enjoined Code and information designated "Highly Confidential" by Positive Software *in a copyright infringement case*. Like the sealing order and protective order in *Grove*, the Court should read the Protective Order and Memorandum Opinion and Order in conjunction not only to protect the documents produced in litigation, but their content.[13]

## II.
## THE EVIDENCE SUPPORTS A FINDING OF WILFUL CONTEMPT

As established in Positive Software's prior briefing, Mr. Norment's use of the Confidential Information was not innocent. New Century cannot rely upon the fact that its lawyers directed the contemptuous conduct to escape responsibility for their actions. The majority of courts to consider the issue have held that even "good faith reliance on the advice of counsel does not constitute a defense to wilful disobedience" of a court order. *Cable News Network, Inc.*, 865 F. Supp. at 1558-1559 (*citing United States v. Remini*, 967 F.2d 754 (2d

---

[12]Norment Depo. at 110:15-18.

[13]*Grove,* 888 F. Supp. at 1439.

BENCH BRIEF IN SUPPORT OF MOTION FOR CONTEMPT - PAGE 7

Cir. 1992); *United States v. Underwood*, 880 F.2d 612 (1st Cir. 1989); *United States v. Monteleone*, 804 F.2d 1004, 1010 (7th Cir. 1986) *cert. denied* 480 U.S. 931 (1987); *United Savings v. Armstrong*, 781 F.2d 700, 706 (9th Cir. 1986); *United States v. Seavers*, 472 F.2d 607 (6th Cir. 1973)).

The actions of New Century and its counsel in violating the Court's orders were obviously intentional, otherwise no reason would have existed for the efforts to hide the actions from Positive Software. Someone who believes they have a right to use software subject to an injunction by a federal court does not do so in secret, but openly. If the access to and use of the Enjoined Code by Mr. Norment and others at New Century had been believed to be legitimate, objections during Mr. Norment's deposition related to (1) who enjoyed access to the Enjoined Code; (2) who utilized the Enjoined Code to "aid the defense"; and (3) to whom the work product of such uses had been disclosed all would have been answered, as none of those questions go to the content of any attorney-client communications or work product.[14]

One need only look at the March 7, 2003 Declaration of John Norment to understand that New Century and its counsel understood that the Court wanted the Enjoined Code out of New Century's hands, "forensic copies, back up tapes, and source code . . . .have been or will be placed in a temperature controlled, secure location *in the custody and control of legal*

---

[14] Asking an attorney who they spoke to in an organization does not require the attorney to reveal what either party to the conversation said. Likewise, asking for the identities of who viewed or created "work product" does not require the disclosure of its content.

BENCH BRIEF IN SUPPORT OF MOTION FOR CONTEMPT - PAGE 8

*counsel.*"[15]

### III.
### POSITIVE REQUESTS A FULL INVESTIGATION

Allowing a party to fully investigate their opponent's contempt is relatively commonplace. *See Daniels v. Wadley*, 926 F.Supp. 1305, 1314 (M.D. Tenn. 1995) (court grants plaintiff's motion to investigate contempt). In this matter, with the Contemnors contempt already admitted to in part, the inquiry should answer the following questions:

1. Which individuals (disclosure to include their roles in creating, maintaining or developing software for New Century) enjoyed access to or used the Enjoined Programs since April 28, 2003?

2. What uses were made of the Enjoined Code by such persons since April 28, 2003?

3. What work product resulted, in whole or in part, from use of the Enjoined Code since April 28, 2003?

4. Who utilized or viewed or enjoyed access to such work product?

5. What uses were made of such work product?

6. What justifications exist, if any, for access to and use of the Enjoined Code since April 28, 2003?

7. The past and current locations of all copies of the Enjoined Code as well as the identities of custodians?

---

[15]March 7, 2003 Declaration of John Norment at 3, ¶ 10 (previously provided <u>Exhibit 6</u> to Positive Software's reply brief) (emphasis added.)

BENCH BRIEF IN SUPPORT OF MOTION FOR CONTEMPT - PAGE 9

8.  How many copies of the Enjoined Code have been made since April 28, 2003, who made such copies and who authorized their creation?

Only after obtaining full answers to these and follow-up questions during depositions will Positive Software and the Court know the full extent of the Contemnors' contempt, the identity of other contemnors and the harm to Positive Software. The Court should hesitate to sanction or punish the Contemnors until it determines the full scope of the contemptuous conduct.

The Arbitrator has also left it to the Court to determine whether the work product resulting from Contemnors' contempt will be considered privileged.[16] The Court should allow discovery on the basis of any privilege asserted to the Norment Analysis. Such discovery was completely blocked during Mr. Norment's deposition.

---

[16]*See* Second Order Re Motion to Enforce Protective Order & Rule 193.3(d), attached as Exhibit 2 ("PSS is permitted to use NC 13079 at the final hearing, although the Arbitrator may (I) *after a ruling from the Federal District Court on the contempt and/or privilege issues*, or (ii) after hearing further evidence by the parties, choose not to rely upon it.") (emphasis added).

BENCH BRIEF IN SUPPORT OF MOTION FOR CONTEMPT - PAGE 10

Respectfully submitted,

_____

| | |
|---|---|
| **OF COUNSEL** | **W. RALPH CANADA, JR.**<br>State Bar No. 03733800<br>**MICHAEL W. SHORE**<br>State Bar No. 18294915<br>**JEVEN R. SLOAN**<br>State Bar No. 24039177<br>**ALFONSO GARCIA CHAN**<br>State Bar No. 24012408 |
| **STEVEN THRASHER**<br>State Bar No. 00797555<br>391 Sandhill Drive, Suite 1600<br>Richardson, Texas 75080<br>(972) 918-9312<br>(972) 231-2686 (Fax) | |

**SHORE ★ DEARY, L.L.P.**
State Bar No. 24012408
2515 McKinney Avenue
Suite 1565
Dallas, Texas 75201
(214) 292-2600
(214) 739-3879 (FAX)

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon all the following on the 14th day of January, 2004:

*Via Hand Delivery*
Ms. Ophelia Camiña, Esq.
Mr. Barry Barnett, Esq.
Susman Godfrey, L.L.P.
901 Main Street, Suite 4100
Dallas, Texas 75202-3775

_____
Michael W. Shore