**ORIGINAL**



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| POSITIVE SOFTWARE SOLUTIONS, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:03-CV-0257-N |
| | § | |
| NEW CENTURY MORTGAGE CORP., ET AL., | § | |
| | § | |
| Defendants. | § | |

FILED
JAN 15 2004
CLERK, U.S. DISTRICT COURT
By _____
Deputy

---

### PLAINTIFF'S POST-HEARING SUPPLEMENTAL BRIEFING

---

TO THE HONORABLE UNITED STATES DISTRICT JUDGE DAVID C. GODBEY:

Pursuant to the Court's request during this morning hearing, Plaintiff Positive Software Solutions, Inc.[1] respectfully submits the following briefing on issues of crime-fraud exception and criminal contempt in relation to Plaintiff's *Motion for Contempt* [Docket No. 121] and the issues related to the document authored by New Century Mortgage Corporation's[2] Chief Technology Author John Norment.[3]

### I. CRIME FRAUD EXCEPTION

To the extent any attorney-client privilege or work product protection applies to the Norment Analysis or any other evidence relating to New Century's use of the LoanForce software and

---

[1]Hereinafter referred to as "Positive Software."

[2]The Defendants are collectively referred to as "New Century."

[3]The document is also known as the Microsoft Excel file "DBAnalysisJN(J921).xls," New Century document no. NC 13079.

129

database codes after April 28, 2003 (which Positive Software contends it does not), the crime-fraud
exception also applies and removes any privilege or work product protections.  Under the crime-
fraud exception, the attorney-client privilege can be overcome "where communication or work
product is intended to further continuing or future criminal or fraudulent activity."[4]

As the Court noted at the hearing this morning, the crime-fraud exception is implicated in
several ways with respect to the Norment Analysis and evidence regarding it.  The following is a
non-exclusive list of the past, continuing, and future crimes and acts of fraud that this purported
"work product" is intended to further:

A.  THE CRIMES.

1.  Criminal Count I: Violation of the Copyright Act.

Willful copyright infringement is a federal crime under § 506(a) of the Copyright Act, which
states in pertinent part:

> Section 506.  Criminal offenses
> (a)  Criminal Infringement. - Any person who infringes a copyright willfully ...
> for purposes of commercial advantage or private financial gain ... shall be punished
> as provided under section 2319 of title 18, United States Code. ....[5]

The crime carries with it imposition of substantial fines and imprisonment of up to 10 years.[6]

The evidence of record shows that New Century's attorney Ophelia Camiña instructed that
Mr. Norment make and use copies of the LoanForce software and database to develop the Norment
Analysis.  The evidence shows that Ms. Camiña intended to use the Norment Analysis to gain

---

[4]*See United States v. Edwards*, 303 F.3d 606, 618 (5th Cir. 2002) (citations and internal
quotations omitted); *In re Grand Jury Subpoena*, 220 F.3d 406, 410 (5th Cir. 2000).

[5]17 U.S.C. § 506(a).

[6]*See* 18 U.S.C. § 2319.

PLAINTIFF'S POST-HEARING SUPPLEMENTAL BRIEFING - PAGE 2

tactical advantage during the upcoming arbitration proceeding and prevent financial loss to her client in the form of a judgment for money damages. Ms. Camiña, Mr. Norment, and New Century therefore acted in concert to willfully infringe Positive Software's copyrights in LoanForce for purposes of commercial advantage and private financial gain, all in criminal violation of § 506(a) of the Copyright Act.

### 2.   Criminal Count II: Violation of the Digital Millennium Copyright Act.

Willful circumvention of copyright protection systems is a federal crime under § 1201(a) of the Digital Millennium Copyright Act, which states in pertinent part:

> **Section 1204. Criminal offenses and penalties**
> (a)     In general. - Any person who violates section 1201 or 1202 willfully and for purposes of commercial advantage or private financial gain -
> > (1)     shall be fined not more than $500,000 or imprisoned for not more than 5 years, or both, for the first offense; and
> > (2)     shall be fined not more than $1,000,000 or imprisoned for not more than 10 years, or both, for any subsequent offense.[7]

The evidence of record shows that the LoanForce software and database employ copyright protection systems in the form of the LoanForce Authentication System (*i.e.*, user identification and password protection) and a Software Key. Mr. Norment, acting at the direction of Ms. Camiña, willfully circumvented both copyright protection systems during the preparation of the Norment Analysis. Mr. Norment avoided the LoanForce Authentication System (which was present on the front end) and its Software Key (which had been turned "off") by directly accessing the LoanForce database and copying substantial portions into the Microsoft Excel spreadsheets included in the Norment Analysis. By directing Mr. Norment to engage in this conduct, Ms. Camiña intended to gain tactical advantage during the upcoming arbitration proceeding and prevent financial loss to her

---

[7]17 U.S.C. § 1204(a).

client in the form of a judgment for money damages. Ms. Camiña, Mr. Norment, and New Century

therefore acted in concert to willfully and for purposes of commercial advantage or private financial

gain circumvent LoanForce's copyright protection systems, all in criminal violation of § 1201(a).

### 3.    Criminal Count III: Violation of the National Stolen Property Act.

Knowing transmission of goods taken by fraud is a federal crime under § 2314 of the

National Stolen Property Act, which states in pertinent part:

> **Section 2314. Transportation of stolen goods, securities, moneys, fraudulent State tax stamps, or articles used in counterfeiting.**
> Whoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud ... Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

The evidence of record shows that Ms. Camiña was e-mailed the Norment Analysis,

evidently from New Century's location in California to Susman Godfrey's offices in Texas. New

Century and its counsel admit that the LoanForce software and database are worth at least $86,100.

They knew that Mr. Norment's accessing, copying, and use of LoanForce violated the Court's

protective and injunctive orders. They attempted to suppress all evidence of the Norment Analysis

by not disclosing Mr. Norment as required under the protective order, asserting clearly inapplicable

privileges and exemptions from discovery, and having Mr. Norment lie under oath during his

deposition about the transmission of substantial portions of LoanForce copied into the Norment

Analysis. Ms. Camiña, Mr. Norment, and New Century therefore acted in concert to transmit and

transfer in interstate commerce goods and merchandise known to be converted or taken by fraud, all

in criminal violation of § 2314.

### 4.    Criminal Counts IV and V: Theft of Trade Secrets

The acts of New Century's employees and counsel also constitute a federal crime under the

Federal Economic Espionage Act and the Texas Penal Code.  In particular, the Texas Penal Code

states:

> **Section 31.05.  Theft of Trade Secrets**
> (b)    A person commits an offense if, without the owner's effective consent, he
> knowingly:
>> (1)    steals a trade secret;
>> (2)    makes a copy of an article representing a trade secret; or
>> (3)    communicates a trade secret.[8]

The Federal Economic Espionage Act is similar to the Texas Penal Code, but provides

substantially more expansive prohibitions against such acts.[9]

It is clear from the Court's modification to the protective order that Positive Software's

confidential information and trade secrets are subsumed within its LoanForce software and database.

The evidence of record shows that Ms. Camiña and Mr. Norment knowingly made a copy of the

electronic media that stored LoanForce and communicated analyses derived therefrom by e-mail, all

without the knowledge, much less consent, of Positive Software.  Ms. Camiña, Mr. Norment, and

New Century therefore acted in concert to knowingly make a copy of an article representing a trade

secret and communicated a trade secret, all in violation of at least § 31.05(b) of the Texas Penal

Code, and also § 1832 of the Federal Economic Espionage Act.

---

[8]TEXAS PENAL CODE § 31.05(b).

[9]18 U.S.C. § 1832.

### 5.   CRIMINAL COUNTS VI AND VII:  PERJURY

Mr. Norment stated in his declaration: "All these materials have been or will be placed in a temperature controlled, secure location in the custody and control of legal counsel."[10]  Mr. Norment also stated in his deposition that the last time he saw LoanForce "would be prior to the deletion of the system in April of 2003."[11]  Both statements were made under oath and subject to penalties of perjury.  Both statements are demonstrably false.  The evidence of record shows that LoanForce was not in the "custody and control of legal counsel," but freely accessible to Mr. Norment, New Century's Chief Technology Officer, and others under his direction in the Retail Division.  The Norment Analysis was last modified by Mr. Norment on December 2, 2003, which was 21 days before he was deposed.

### B.   THE ACTS OF FRAUD.

#### 1.   Fraud Count I: New Century "cleansed" itself.

New Century submitted Dr. Pooch's declaration to this Court, in which he represented: "Based on my professional opinion, New Century has satisfactorily cleansed itself of LoanForce, LoanTrack, LTK Moon and LF Moon."[12]  Evidently the "cleaning" did not include the office or computer of Mr. Norment, New Century's Chief Technology Officer who leads the development of the allegedly infringing software.

---

[10]Declaration of John Norment at 3, ¶ 10 (attached as Exhibit A).

[11]Norment Depo. at 127:17-22 (attached as Exhibit B).

[12]Amended Declaration of Udo Pooch ¶ 5 (attached as Exhibit C).

PLAINTIFF'S POST-HEARING SUPPLEMENTAL BRIEFING - PAGE 6

2.      **Fraud Count III: Any harm to Positive Software had been removed.**

New Century's counsel Barry Barnett represented to the Court, in writing, that any harm to Positive Software has been ameliorated by New Century's purported "cleansing" operations.[13]  As shown throughout Plaintiff's briefing and above, such representations are demonstrably false.

3.      **Fraud Count IV: New Century's accused works were developed in a "clean room."**

Mr. Barnett also states: "Again under Dr. Pooch's supervision, New Century is using a 'clean room' approach to mapping its prospects data to and loading the data into the new database in MLAS."[14]  It is clear from the Norment Analysis that this purported "clean room" was never "clean," but has always been soiled by the presence of the very person who admittedly leads New Century's development of its allegedly infringing software.

4.      **Fraud Counts V and VI: Violations of federal court orders.**

As briefed and discussed in detail during this morning's hearing, it is clear that the Norment Analysis was produced in furtherence of New Century's violations of the Protective Order and Injunctive Orders, and as such, is rendered discoverable under the crime-fraud exception.

All of these items are continuing criminal and fraudulent activities, of which the Norment Analysis, evidence regarding it, and other evidence regarding New Century's access to the LoanForce software and database codes are evidence; as such the crime-fraud exception prevents the assertion of privilege with respect to such activities.  Like the defendants in *Edwards*: "rather than merely defending [itself] against civil actions involving past wrongdoing [New Century is] actively

---

[13]*See generally* letter from Barry C. Barnett to the Honorable David C. Godbey (Apr. 21, 2003) (attached hereto as Exhibit D).

[14]*See id.* at 1.

PLAINTIFF'S POST-HEARING SUPPLEMENTAL BRIEFING - PAGE 7

continuing the cover up."[15]   The Court should find that, to the extent the Norment Analysis and evidence regarding it or other uses of LoanForce since April 28, 2003 would be otherwise covered by the attorney client privilege or the work priduct doctrine, the crime fraud exception removes any such protection.

## II. CRIMINAL CONTEMPT

The four elements of criminal contempt are "(1) misbehavior, (2) in or near the presence of the court, (3) with criminal intent, (4) that resulted in an obstruction of the administration of justice."[16]   As shown throughout Plaintiff's briefing and above, New Century and its counsel engaged in this premeditated course of conduct in violation of the letter and spirit of at least two court orders.  New Century and its counsel did so willfully as part of a overall scheme to withhold discoverable information from Positive Software, gain tactical advantages at trial, and surreptitiously continue its employees' access to software that has otherwise been enjoined.  The fact that New Century's misconduct implicates both civil and criminal contempt highlights the serious nature of these proceedings.

---

[15]*Edwards*, 303 F.3d at 619.

[16]*United States v. Ortlieb*, 274 F.3d 871, 874 (5th Cir. 2001) (citing *American Airlines, Inc. v. Allied Pilots Ass'n*, 968 F.2d 523, 531 (5th Cir.1992)).  *See also* 18 U.S.C. § 401.

Respectfully submitted,

**ATTORNEYS FOR PLAINTIFF**
**POSITIVE SOFTWARE SOLUTIONS, INC.**

W. RALPH CANADA, JR.
State Bar No. 03733800
MICHAEL W. SHORE
State Bar No. 18294915
ALFONSO GARCIA CHAN
State Bar No. 24012408
**SHORE ★ DEARY, L.L.P.**
2515 McKinney Avenue, Suite 1565
Dallas, Texas 75201
tel. 214-292-2600, fax 214-739-3879

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon all the following on the __15th__ day of January, 2004:

*Via Fax*
Ms. Ophelia Camiña, Esq.
Susman Godfrey, L.L.P.
901 Main Street, Suite 4100
Dallas, Texas 75202-3775

Alfonso Garcia Chan
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| POSITIVE SOFTWARE SOLUTIONS, INC., | § |
| | § |
| Plaintiff, | § |
| | § |
| vs. | § |
| | § |
| NEW CENTURY MORTGAGE CORPORATION, | § |
| NEW CENTURY FINANCIAL CORPORATION, | § |
| ECONDUIT CORPORATION, THE ANYLOAN | § |
| COMPANY, JEFF LEMIEUX, and FRANK | § |
| NESE, | § |
| | § |
| Defendants. | § |

Civil Action No. 3:03-CV-0257-N

## DECLARATION OF JOHN NORMENT

I, John Norment, under penalty of perjury hereby declare the following:

1.     My name is John Norment. I am over the age of twenty-one (21), have not been convicted of a crime involving moral turpitude, and fully competent to make this Declaration. I have personal knowledge of the facts in this Declaration, and these facts are true and correct.

2.     I am the VP, Chief Technology Officer- Retail, for New Century Mortgage Corporation ("New Century"). New Century has its headquarters in Irvine, California. "Retail" is a division of New Century, a subsidiary of New Century Financial, a publicly traded company. New Century originates, purchases and sells non prime loans.

3.     I understand Positive Software Solutions, Inc. ("PSS") filed a lawsuit in Texas

Declaration of John Norment – Page 1

claiming that it developed and owns software called TeleTrend and LoanForce. I understand that PSS also claims that employees of New Century copied this software. New Century owns software called LoanTrack and mLAS. I further understand that PSS claims that LoanTrack and/or mLAS are derivatives of TeleTrend and/or LoanForce.

4.      Immediately upon learning of PSS's claims, a team comprising of Information Technology ("IT") Operations, the Security Group and the Retail IT group (hereinafter collectively the "Team") began a project to preserve all electronic materials that may be relevant to PSS's claims. This Team has been working under my supervision and under the direction of legal counsel. The objectives of this Team were to: (a) create a forensic image of specific desk top computers; (b) create a forensic image of specific e-mail boxes; (c) create a forensic image of all Retail IT servers; (d) preserve the back up tapes; and (e) copy the source code for LoanTrack and mLAS. This project was begun on February 27, 2003. Below is a description of the steps taken by the Team.

5.      The Desktop Imaging. The Team identified the desktops of over thirty five (35) IT and corporate personnel who may have knowledge of the claims asserted by PSS. The Team then imaged these desktops by taking the following steps: shutting down the desk top, removing the hard drive, installing the hard drive into a dedicated system used for this type of imaging, creating a forensic image of the hard drive, then creating a DVD image of the forensic image.

6.      The E-Mail Imaging. The Team also imaged specific e-mail boxes by taking the following steps: creating a read only copy of each e-mail box, creating a separate file for each user, and then storing the file on a specific, secured server.

7.      The Server Imaging. The Team also directed that all Retail IT servers be imaged.

Because New Century does not have the software or disk space to create a complete forensic server image, we are in the process of hiring a consultant, to assist us with this project. The consultant informs us that it will cost $15,000 to perform this imaging service.

8. Preservation of back up tapes. The Team also has preserved the back up tapes for all Retail IT servers. Specifically, the Team stopped any recycling of back up tapes. In addition, all back up tapes created since February 27, 2003 have been changed to a permanent, do not re-use, status.

9. Preservation of the Source Code. The Team has copied the source code for LoanTrack and mLAS. I have determined that no software called mLOS exists within New Century. LF Moon and LTK Moon are databases that will be imaged with the servers. LeadExpress is an application that has been imaged with the desktops.

10. It is the intention of our Team to preserve these forensic copies, back up tapes, and source code in the event they should become relevant in this litigation. There is no intention to destroy any of this data. All these materials have been or will be placed in a temperature controlled, secure location in the custody and control of legal counsel.

11. I estimate that in total, it has taken 120 hours to complete the projects identified above. These hours expended, therefore, have cost New Century approximately $21,000. In addition, New Century has had to incur or will incur expenses, specifically engaging the consultant, purchasing DVD's and back up tapes, at approximate total expense to date of $45,000.

12. Anne Breuer, was formerly an employee of New Century. New Century terminated Ms. Breuer's at-will employment late last year. A few months later, Ms. Breuer filed a lawsuit against New Century, among others. When New Century terminated Ms. Breuer her computer was

Declaration of John Norman - Page 3

quarantined so that nothing on it would be changed. New Century took this precaution because it expected Ms. Breuer would file a lawsuit and wanted to preserve evidence.

I, John Norment, declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 7th day of March, 2003.

_John Norment_
John Norment
VP, Chief Technology Officer-Retail



## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Declaration of John Norment was served on counsel of record on this 7th day of March, 2003, as follows:

W. Ralph Canada, Jr.                    *Via Facsimile Transmission*
Shore & Deary, L.L.P.
2515 McKinney Avenue
Suite 1565
Dallas, Texas 75201


Joe Kendall                             *Via Facsimile Transmission*
Provost Umphrey, L.L.P.
3232 McKinney Avenue, Suite 700
Dallas, Texas 75204


_____
Ophelia F. Camiña

Declaration of John Norment – Page 5

Page 95

1             AMERICAN ARBITRATION ASSOCIATION

2                      DALLAS, TEXAS

3

4

5

6    IN THE MATTER OF THE              )
     ARBITRATION BETWEEN:              )
7                                      )
     NEW CENTURY MORTGAGE              )
8    CORPORATION, et al.,              )
                                       )
9        Claimant/Counter-Respondent,  )
                                       )  No.
10       vs.                           )  71 117 00181 03
                                       )
11   POSITIVE SOFTWARE SOLUTIONS,      )
     INC.,                             )
12                                     )
         Respondent/Counter-Claimant.  )
13   _____ )

14

15      * * H I G H L Y    C O N F I D E N T I A L * *

16

17           Deposition of JOHN W. NORMENT,

18      Volume II, taken on behalf of the

19      Respondent/Counter-Claimant at

20      2600 Michelson Drive, Suite 800,

21      Irvine, California, commencing at

22      10:03 a.m., on Tuesday, December 23,

23      2003, before Erika Kotteakos, Certified

24      Shorthand Reporter No. 9698.

25

Page 127

1        MR. SHORE:  Ms. Camina, are you saying that he

2    did sit in on such meetings or --

3        MS. CAMINA:  You heard my objection.

4        MR. SHORE:  I'm just trying to find out.  If

5    the answer is no, there's not possibly any privilege

6    implications.  I mean, if it didn't happen, it can't

7    be privileged.  And to assert a privilege, you're

8    going to have to show that he was present, who was

9    present, and have to set forth the evidentiary basis

10   for the privilege.

11       MS. CAMINA:  I disagree.

12       MR. SHORE:  Are you not willing to do that?

13       MS. CAMINA:  I disagree.

14       MR. SHORE:  Okay.  Well, it's your right to

15   disagree.

16   BY MR. SHORE:

17       Q   Mr. Norment, when is the last time you

18   actually saw with your own eyes the LoanForce SQL

19   database code?

20       A   It would be prior to the filing -- I'm

21   sorry, it would be prior to the deletion of the

22   system in April of 2003.

23       Q   Well, then, how did you compare the

24   LoanForce code to the LTKMoon code and the LFMoon

25   code in November and December of 2003?

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| POSITIVE SOFTWARE SOLUTIONS, INC., §<br>§<br>Plaintiff, §<br>§<br>vs. §<br>§<br>NEW CENTURY MORTGAGE CORPORATION, §<br>NEW CENTURY FINANCIAL CORPORATION, §<br>ECONDUIT CORPORATION, THE ANYLOAN §<br>COMPANY, JEFF LEMIEUX, and FRANK §<br>NESE, §<br>§<br>Defendants. § | Civil Action No. 3:03-CV-0257-N |

---

## AMENDED DECLARATION OF UDO POOCH

1.      My name is Udo W. Pooch. I am over the age of twenty-one (21) and am in all respects competent to make this Declaration. I have personal knowledge of the facts in this Declaration, and these facts are true and correct.

2.      I am Raytheon Professor, Computer Science, at Texas A&M University in College Station, Texas. I received a Bachelor of Science degree in Physics from the University of California at Los Angeles in 1963 and a Doctor of Philosophy degree in Theoretical Physics from the University of Notre Dame in 1969.

3.      On or about April 18, I designed a plan for New Century to cease using LoanForce, LoanTrack-1, LTK Moon and LF Moon, extract the data and load the data into mLAS. The plan I designed was staged as follows:

Step One: Cease All Use.   New Century ceased using LoanTrack-1 and the LoanForce database. I understand this was done commencing April 18, 2003.

Step Two: Extract All Data To Flat file. The data in the database was extracted from the database into a flat file. There were no integration and inter-relationship information of the extracted database stored with the flat file (I.e., source information as to which table in the database the data came from). I understand the data was stored on a server that is in the possession of New Century-Corporate IT and no New Century-Retail IT personnel had access. I understand this was done on April 18, 2003.

Step Three: Prepare List of Data. New Century-Retail IT personnel documented the business use of the data in the Flat files. I understand this was done on April 18, 2003.

Step Three: Map Data From Flat file to mLAS. Mr. Jeff Stay of Vision Core, in my presence, wrote loading scripts which were used to map the data from the Flat file to mLAS. This was done on April 22, 2003.

Step Four: Load of Data. The data was moved from the Flat file into a staging file and from the staging file into mLAS. This was done on April 22, 2003.

I was physically present and observed Steps Three and Four above. Before Step Four was executed, I reviewed Steps One, Two and Three to verify that they had been done correctly.

4.    On April 22, I also supervised and observed the deletion of LoanForce, LoanTrack, LTK Moon and LF Moon. This was done following my direction and in my presence in the following steps:

Step One: Identify Servers. The servers containing Loan Force, LoanTrack, LTK Moon and LF Moon were identified.

Step Two: Create "Before" Table. A recursive table of contents of each drive on each server was made.

Step Three: Delete. LoanForce, LoanTrack, LTK Moon and LF Moon were deleted on each of the servers, including databases and historical logs.

Step Four: Create "After" Table. Immediately following the deletion, a second recursive table of contents of each drive on each server was made. The two recursive tables of contents reflect the contents of the servers "before" and "after" the deletion and evidence the deletion.

5. Based on my professional opinion, New Century has satisfactorily cleansed itself of LoanForce, LoanTrack, LTK Moon and LF Moon.

I, Udo W. Pooch, declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 24th day of April, 2003.

_____
Udo W. Pooch

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Declaration of Udo Pooch was served on counsel of record on this 1st day of May, 2003, as follows:

W. Ralph Canada, Jr.                    *Via Facsimile*
Shore★Deary, L.L.P.
2515 McKinney Avenue
Suite 1565
Dallas, Texas 75201

Joe Kendall                             *Via Facsimile*
Provost★Umphrey, L.L.P.
3232 McKinney Avenue, Suite 700
Dallas, Texas 75204


Ophelia F. Camiña



# SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
SUITE 4100
901 MAIN STREET
DALLAS, TEXAS 75202-3775
(214) 754-1900
FAX (214) 754-1933
WWW.SUSMANGODFREY.COM

SUITE 950
1880 CENTURY PARK EAST
LOS ANGELES, CALIFORNIA 90067-1606
(310) 789-3100

SUITE 5100
1000 LOUISIANA STREET
HOUSTON, TEXAS 77002-5096
(713) 651-9366

SUITE 3100
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3000
(206) 516-3880

BARRY C. BARNETT
DIRECT DIAL (214) 754-1903

DIRECT DIAL, FAX (214) 665-0832
E-MAIL BBARNETT@SUSMANGODFREY.COM

April 21, 2003

_**VIA HAND DELIVERY**_
Honorable David C. Godbey
U. S. District Court Judge
1100 Commerce Street, 13th Floor
Dallas, Texas 75242

Re:     Civil Action No. 3:03-CV-0257-N; *Positive Software Solutions, Inc. v. New
        Century Mortgage Corporation, et al.*; in the United States District Court for
        the Northern District of Texas, Dallas Division.

Dear Judge Godbey:

I am pleased to report developments that may be decisive of the pending motions for
preliminary injunction and to compel arbitration.

The gist of the report is as follows:

- Under the supervision of Dr. Udo Pooch, New Century Mortgage and
  its affiliates ("New Century") have ceased all use of the LoanForce
  database, LoanTrack-1, LF_Moon, and LTK_Moon.

- Again under Dr. Pooch's supervision, New Century is using a "clean
  room" approach to mapping its prospects data to and loading the data
  into the new database in MLAS. As the Court will recall, MLAS was
  created by programmers who had no access to LoanForce,
  LoanTrack-1, or LoanTrack-2 during the development process and
  who worked for a company, eConduit Corporation, that was not
  acquired by New Century until May 2002.

- New Century has not used LoanForce application software since
  Positive Software, Inc. ("PSS") turned off the "key" on or about

522847v1/006313

Honorable David C. Godbey
April 21, 2003
Page 2

February 6, 2003, the day PSS filed this lawsuit, and has never had access to the source code of the LoanForce application software.

- New Century has no intention of ever again using LoanForce application software, the LoanForce database, LoanTrack, LF_Moon, or LTK_Moon.

- New Century will, no later than April 25, 2003 and under Dr. Pooch's supervision, delete or return to PSS all LoanForce software, including application software and the LoanForce database, that New Century has the ability to access.

- New Century will not use LoanTrack-2 for telemarketing or any other commercial purpose before May 12, 2003.

I am informing the Court of these facts because the Court may want to consider them in connection with PSS's assertions that it is threatened with actual irreparable injury, that an injunction would be equitable, that PSS has clean hands, and that there is insufficient time to refer the dispute over injunctive relief to the arbitrator. We will confirm the information I am now providing in a formal filing.

I also wanted to advise the Court that we expect to file today a motion to strike the supplemental evidence PSS served on us the evening before the unsuccessful mediation last Friday. We believe the supplemental evidence violates Local Rule 56.7, is misleading and a flagrant misuse of information provided specifically for purposes of the mediation, and is an attempt to ambush New Century and the Court with a hired expert's advocacy without a fair opportunity to respond or to test it in deposition. We understand PSS plans to file yet another supplement to the evidence soon.

All of PSS's actions have confirmed to us that this lawsuit is an effort to extract millions of dollars from New Century for what the Court has described as the "awkwardness" of transitioning from one database to another. The software in question is a small fraction of the program New Century licensed for less than $90,000 a year; was largely customized for New Century, often by New Century itself; and consists of simple scripts for creating database tables. For that, PSS is seeking to inflict over broad and serious harm on New Century or extract a settlement for tens or hundred of millions of dollars.

We respectfully submit that the appropriate remedy is for the Court to remit the parties to the already-pending arbitration proceedings. Paragraph 15 of PSS's standard-form Software Subscription Agreement provides that "[t]he arbitrator shall have the authority to award any remedy or relief that a Texas state court or federal

Honorable David C. Godbey
April 21, 2003
Page 3

court could order or grant."  PSS should be permitted to dodge its obligation to
arbitrate this dispute no longer.

Respectfully submitted,

Barry C. Barnett

cc:    Michael W. Shore (Via Fax)
       Ophelia F. Camiña (Firm)